M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY PC**
333 University Ave, Suite 200
Sacramento, CA 95826
Phone: (916) 823-6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

*Attorneys for Plaintiffs and Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIANE MORAN** and **TONJA WILSON,** individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **MATTEL, INC., AMERICAN GIRL, LLC, and AMERICAN GIRL BRANDS, LLC,** <br><br> Defendants. | Case No. 2:26-cv-07231 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Diane Moran and Tonja Wilson ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through counsel, bring this action against Defendants Mattel, Inc. ("Mattel"), American Girl, LLC, and American Girl Brands, LLC (the latter two, together, "American Girl"; and all three, collectively, "Defendants"). The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions, and counsel's investigation, and upon information and belief as to all other matters, are as follows:

## NATURE OF THE CASE

1. This class action arises from Defendants' retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2. Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under the purported authority of IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States, including toys and dolls of the kind Mattel imports and sells.

3. Major U.S. importers—including Defendants—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4. On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful, concluding that IEEPA does not authorize the President to impose tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026).

5. As a consequence of that decision, importers who paid those tariffs— including Defendants—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP"). Mattel has confirmed that it has

already commenced the refund process and is actively working to recover those duties.

6.      The economic reality of the tariff regime, however, is that importers like Mattel did not ultimately bear the full cost of the tariffs. Instead, Mattel passed the elevated costs on to consumers in the form of higher retail prices. Defendants now stands to recover from the government the very duties whose economic burden it shifted to Plaintiffs and the Class—a double recovery that equity will not permit.

7.      Plaintiffs bring this action to recover, on behalf of themselves and a nationwide class of consumers, the tariff-related price increases they paid to Mattel, and to prevent Mattel from retaining both the consumer pass-through and the government refund of the same unlawful tariff charges.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) the proposed Class consists of at least 100 members; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one member of the proposed Class is a citizen of a state different from at least one Defendant. Defendant Mattel, Inc. is a citizen of Delaware and California. Defendants American Girl, LLC and American Girl Brands, LLC are limited liability companies whose citizenship is determined by that of their members, which flows up to Mattel, Inc. None of the exceptions under that subsection applies to this action.

9.      This Court has personal jurisdiction over each Defendant. Defendant Mattel, Inc. is subject to general personal jurisdiction in this District because it maintains its principal place of business—and corporate nerve center—in this District in El Segundo, California. Defendants American Girl, LLC and American Girl Brands, LLC are subject to personal jurisdiction in this District because they are wholly owned subsidiaries of Mattel, Inc. that operate under, and are directed by,

Mattel's California-based corporate management, and because they have purposefully directed their business activities—including the marketing, distribution, and sale of the products at issue—to consumers in California and throughout the United States, and this action arises out of and relates to those activities. In addition, a substantial part of the wrongful conduct alleged herein, including the pricing decisions challenged in this Complaint, occurred in and emanated from this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Mattel, Inc.'s principal place of business is located in this District in El Segundo, California; because Defendants are subject to personal jurisdiction in this District; and because a substantial part of the events and conduct giving rise to the claims, including the pricing decisions challenged in this Complaint, occurred in and emanated from this District.

## PARTIES

11.    Plaintiff Diane Moran is a resident and citizen of New Jersey. During the Class Period,[1] Plaintiff Moran purchased an American Girl-branded doll—a product imported from countries subject to the IEEPA tariffs and sold under one of Mattel's flagship brands. Plaintiff Moran paid a retail price for that product that was increased by Defendants to account for the tariffs imposed on imported products. Plaintiff Moran would not have paid that higher price absent the unlawful tariffs and Mattel's pass-through of those tariffs to consumers.

---

[1] The "Class Period" is the period during which Defendants assessed tariff-related charges to consumers. The precise contours of the Class Period can only be determined through discovery. In no event shall the Class Period be less than the period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment or preliminary approval of a settlement.

12.    Plaintiff Tonja Wilson is a resident and citizen of Ohio. During the Class Period, Plaintiff Tonja Wilson purchased a Barbie-branded product—a product imported from countries subject to the IEEPA tariffs and sold under one of Mattel's flagship brands. Plaintiff Tonja Wilson paid a retail price for that product that was increased by Mattel to account for the tariffs imposed on imported products. Plaintiff Tonja Wilson would not have paid that higher price absent the unlawful tariffs and Defendants' pass-through of those tariffs to consumers.

13.    Defendant Mattel, Inc. is a Delaware corporation with its principal place of business at 333 Continental Boulevard, El Segundo, California 90245. Mattel is a leading global toy and family entertainment company that designs, manufactures, markets, sells, and distributes toys, dolls, and related consumer products throughout the United States under a portfolio of iconic brands, including Barbie and American Girl. A significant portion of the products Mattel sells are imported goods subject to the IEEPA tariffs imposed by the United States government.

14.    Defendant American Girl, LLC is a Delaware limited liability company. American Girl, LLC is a wholly owned, direct or indirect, subsidiary of Mattel, Inc., through which Mattel operates the American Girl business. The American Girl business is operationally headquartered in Middleton, Wisconsin, and its products are marketed, distributed, and sold to consumers throughout the United States, including in California.

15.    Defendant American Girl Brands, LLC is a Delaware limited liability company. American Girl Brands, LLC is a wholly owned, direct or indirect, subsidiary of Mattel, Inc., through which Mattel operates the American Girl business. Like American Girl, LLC, it is operationally associated with the American Girl business headquartered in Middleton, Wisconsin, and its products are marketed, distributed, and sold to consumers throughout the United States, including in

California. American Girl, LLC and American Girl Brands, LLC are referred to collectively herein as "American Girl."

## FACTUAL BACKGROUND

### A.    Defendants and Their Corporate Structure

16.    Mattel is one of the largest toy companies in the world. Mattel organizes its portfolio of owned and licensed brands into categories, the largest of which is its Dolls category. Mattel's Dolls category is driven by its flagship Barbie brand, together with a collection of complementary brands offered globally, including American Girl, Disney Princess, Disney Frozen, Monster High, and Polly Pocket.

17.    Mattel, Inc. is the parent company. It was originally incorporated in California in 1948 and reincorporated in Delaware in 1968, and it maintains its principal executive offices—and its corporate nerve center—in El Segundo, California. Mattel conducts its business directly and through a network of wholly owned operating, sales, distribution, and brand subsidiaries. Mattel's brands are not all organized the same way: some are operated directly by Mattel, Inc., while others are operated through separately organized subsidiary entities.

18.    American Girl is operated through separately organized, wholly owned subsidiaries of Mattel, Inc. The American Girl business originated as the Pleasant Company, which Mattel acquired in 1998 and subsequently renamed American Girl. Today, the American Girl business is operated through Defendants American Girl, LLC and American Girl Brands, LLC, each a Delaware limited liability company wholly owned, directly or indirectly, by Mattel, Inc. American Girl offers an extensive portfolio of dolls, accessories, books, and related lifestyle products, which are marketed, distributed, and sold to consumers throughout the United States, including through American Girl's own retail and direct-to-consumer channels and through third-party retailers.

19.     Barbie, by contrast, is not a separately incorporated company. Barbie is a brand and product line within Mattel's "Dolls" product category—Mattel's flagship brand and one of the best-known consumer brands in the world—owned and operated directly by Mattel, Inc. and marketed and distributed through Mattel's general operating and sales subsidiaries. There is no separate legal entity named "Barbie, Inc." or the like. Claims arising from Barbie-branded products are therefore asserted against Mattel, Inc. directly.

20.     In addition to Barbie and American Girl, Mattel's Dolls category includes a collection of complementary brands offered globally, such as Disney Princess, Disney Frozen, Monster High, and Polly Pocket. Across its broader portfolio, Mattel also owns and operates well-known brands in other categories, including Hot Wheels and Fisher-Price. Like Barbie, these brands are product lines rather than separately named defendants in this action; the claims in this Complaint concern Defendants' Barbie- and American Girl-branded products.

21.     At all relevant times, the pricing decisions challenged in this Complaint—including the decision to raise prices on imported products to account for the tariffs—were made and directed from Mattel's corporate headquarters in El Segundo, California, and applied to products sold under Mattel's brands, including Barbie and American Girl. Plaintiff Diane Moran purchased an American Girl-branded product. Accordingly, Plaintiffs name as Defendants Mattel, Inc., which sets and directs the challenged pricing and operates the Barbie brand directly, and American Girl, LLC and American Girl Brands, LLC, the subsidiaries through which the American Girl business is operated.

22.     Mattel manufactures a substantial portion of its products outside the United States and imports those products into the United States for sale. Mattel has publicly acknowledged that, even in the face of tariffs, it does not expect to relocate toy manufacturing to the United States; instead, it has stated that it expected to raise

prices in the United States to offset the tariffs. As a major importer of consumer goods, Mattel was directly exposed to the IEEPA tariffs and the cost increases they imposed.

**B.    The IEEPA Tariffs**

23.    Beginning in February 2025, the federal government, acting under the purported authority of IEEPA, imposed a series of sweeping tariffs on imports from numerous countries, including substantial additional tariffs on goods imported from China. Those tariffs were repeatedly increased and modified over the following months, at times reaching effective rates well in excess of 100 percent on certain Chinese goods.[2]

24.    The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for companies, like Defendants, that rely heavily on international supply chains to source merchandise.

25.    Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major companies such as Defendants—were required to pay the IEEPA tariffs to CBP upon entry of covered merchandise into the country.[3]

---

[2] *See* Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 7, 2025); Exec. Order No. 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025). The President thereafter issued numerous further increases and modifications, raising the effective tariff rate on most Chinese goods as high as 145%. *See Learning Resources, Inc. v. Trump*, 607 U.S. 229, 238 (2026).

[3] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers* (2006), https://www.cbp.gov/sites/default/files/documents/Importing%20into%20the%20U.S.pdf (last accessed June 30, 2026).

26.     Numerous importers challenged the legality of the IEEPA tariffs, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[4]

### C.     Tariffs Are Economically Borne by Consumers

27.     Economists and government agencies have long recognized that tariffs are largely borne by domestic consumers rather than by foreign exporters or by the importing firms that formally remit the duties. When tariffs increase the cost of imported goods, importers and other downstream sellers typically raise prices to offset those additional costs, passing the economic burden of the tariffs through to end purchasers.[5]

28.     Studies and surveys examining the recent U.S. tariff regime are consistent with this principle, finding that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices, and that the pass-through of the 2025 tariffs to consumer prices was substantial.[6]

29.     These findings confirm that the tariffs imposed during the relevant period functioned as a direct economic burden on consumers, because businesses

---

[4] *See, e.g.*, *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026); *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (en banc).

[5] *See, e.g.*, Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018 Tariffs on Prices and Welfare*, 33(4) J. Econ. Persp. 187 (2019), https://pubs.aeaweb.org/doi/pdfplus/10.1257/jep.33.4.187 (last accessed June 30, 2026).

[6] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/ (last accessed June 30, 2026); *see also* Ron Mau & Tucker Smith, *Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026*, Fed. Rsrv. Bank of Dall. (May 5, 2026), https://www.dallasfed.org/research/economics/2026/0505-mau (last accessed June 30, 2026).

responded to the tariffs by increasing the prices charged to end purchasers rather than internally absorbing the additional costs.

### D.   Mattel's Statements on Tariff-Related Price Increases and Refunds

30.   Mattel publicly acknowledged, early in the tariff period, that the tariffs would increase its costs and place upward pressure on consumer prices. In its first-quarter 2025 disclosures, Mattel stated that, among the mitigating actions it was taking to offset the cost impact of the tariffs, it would, "where necessary, tak[e] pricing action in its U.S. business."[7]

31.   In May 2025, Mattel's Chief Executive Officer publicly stated that he did not foresee toy manufacturing returning to the United States and that the company instead expected to raise prices in the United States to offset the tariffs imposed on Chinese imports.[8]

32.   On its second-quarter 2025 earnings call, Mattel's Chief Financial Officer confirmed that the company had "already implemented pricing actions that were necessary in our US business" in response to the tariffs, in close collaboration with its retail partners, and described pricing as one of the levers the company was using to offset the tariff impact. Mattel estimated its tariff exposure for the year, before mitigating actions, at less than $100 million.[9]

33.   Mattel thus did not simply absorb the full cost of the unlawful tariffs. Rather, Mattel passed on at least part of those costs to consumers through higher

[7] Mattel, Inc., *Mattel Reports First Quarter 2025 Financial Results* (May 5, 2025), https://corporate.mattel.com/news/mattel-reports-first-quarter-2025-financial-results (last accessed June 30, 2026).

[8] *See* Sarah Whitten, *Mattel CEO says toy manufacturing won't come to America, but price hikes will*, CNBC (May 6, 2025), https://www.cnbc.com/2025/05/06/mattel-ceo-toy-manufacturing-trump-tariffs.html (last accessed June 30, 2026).

[9] Paul Ruh (Chief Financial Officer, Mattel, Inc.), *Q2 2025 Earnings Call*, at 7 (July 23, 2025), https://s21.q4cdn.com/605014885/files/doc_financials/2025/q2/Mattel-2Q25-Earnings-Call-Transcript.pdf (last accessed June 30, 2026).

retail prices. Mattel's own public statements and actions establish a coherent timeline: Mattel acknowledged tariff-driven cost increases, and Mattel took pricing action on its U.S. products in direct response to those tariff-driven cost increases during the tariff period.

34.     These public admissions are consistent with Mattel's broader financial disclosures during the Class Period. Mattel reported that its gross margin benefited from mitigating actions taken to offset the tariffs, confirming that those actions—including its U.S. pricing actions—helped recover the tariff costs rather than leaving them with Mattel.[10]

35.     As a result, consumers who purchased goods from Defendants during the tariff period, including purchasers of Barbie and American Girl products, paid elevated prices reflecting the tariff-related cost increases incorporated into Defendants' retail pricing.

**E.     The Tariffs Are Invalidated and Mattel Pursues Refunds**

36.     On February 20, 2026, the Supreme Court held that IEEPA does not authorize the President to impose tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026). A majority of the Court agreed that the statute's authorization for the President to "regulate … importation" does not encompass the power to impose tariffs, which the Court treated as an exercise of the taxing power that the Constitution reserves to Congress and that Congress did not delegate through

---

[10] *See* Mattel, Inc., *Quarterly Report (Form 10-Q)*, at 31 (May 1, 2026) (reporting that gross margin "benefited from mitigating actions to offset tariffs and realized savings from the Optimizing for Profitable Growth program"), https://d18rn0p25nwr6d.cloudfront.net/CIK-0000063276/5fa2f020-4b1a-4f2e-a785-e8d53963ee32.pdf (last accessed June 30, 2026).

IEEPA's general language. The Court accordingly invalidated the challenged tariff orders.[11]

37.     The Supreme Court's decision eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including Defendants—to seek refunds of the tariffs previously collected by the federal government.

38.     Following that ruling, the U.S. Court of International Trade issued an order directing CBP to process refunds of the IEEPA tariffs. As Mattel itself has disclosed, the court immediately suspended that order while CBP develops and implements the refund process, and the refund framework remains subject to ongoing litigation, including potential appeals. The ultimate availability, timing, and amount of any refunds therefore remain subject to that process.[12]

39.     Notwithstanding that uncertainty, Mattel has confirmed that it is affirmatively pursuing refunds of the duties it paid. On its first-quarter 2026 earnings call, Mattel's Chief Financial Officer stated that the company had "started the process of refunds" and was "actively working through the systems."[13] Mattel is

---

[11] *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026). The judgment in No. 24–1287 was vacated and remanded with instructions to dismiss for lack of jurisdiction, and the judgment in No. 25–250 was affirmed. *Id.* Argued Nov. 5, 2025; decided Feb. 20, 2026.

[12] *See* Mattel, Inc., *Quarterly Report (Form 10-Q),* at 31 (May 1, 2026), https://d18rn0p25nwr6d.cloudfront.net/CIK-0000063276/5fa2f020-4b1a-4f2e-a785 -e8d53963ee32.pdf (last accessed June 30, 2026) (disclosing that, following the Supreme Court's ruling, the U.S. Court of International Trade issued an order directing CBP to process refunds of the IEEPA tariffs, but that the court "immediately suspended the order while CBP develops and implements the refund process," and that the refund framework "remain[s] subject to ongoing litigation, including potential appeals"); *see also Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 679285 (Ct. Int'l Trade Mar. 5, 2026).

[13] Paul Ruh (Chief Financial Officer, Mattel, Inc.), *Q1 2026 Earnings Call*, at 7 (Apr.

among the country's major importers of consumer goods and stands to recover substantial sums if and when tariff refunds are paid.

40.   Those expected refunds are significant here precisely because Defendants previously passed tariff-related cost increases through to consumers in the form of higher retail prices. Mattel now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and the Class.

41.   In practical terms, Defendants stand to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it is now in line to recover those same unlawful tariff payments from the federal government. Plaintiffs and Class members paid tariff-inflated prices to Defendants during the Class Period, and Defendants cannot, in equity and good conscience, retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

**F.   Plaintiff Diane Moran's Experience**

42.   Plaintiff Diane Moran purchased an American Girl doll during the tariff Class Period. On August 29, 2025, Plaintiff Moran placed an order for an American Girl "Truly Me" doll sold under Mattel's American Girl brand, for which she paid a product price of $135.00, plus $8.94 in tax, for a total of $143.94.[14]

43.   Plaintiff Moran paid a retail price that was inflated by the tariff-related cost increases that Mattel incorporated into its pricing during the tariff period. She would not have paid that higher price absent the unlawful tariffs and Mattel's pass-through of those tariffs to consumers. Plaintiff Moran is entitled to a refund of the tariff-related price increase she paid, plus interest.

---

29, 2026), https://s21.q4cdn.com/605014885/files/doc_financials/2026/q1/Mattel-Q1-2026-Earnings-Call-Transcript.pdf (last accessed June 30, 2026).

[14] The order, placed through Amazon.com on August 29, 2025 (Order No. 112-0758844-6245032), reflects a product price of $135.00, plus $8.94 in estimated tax, for a grand total of $143.94.

### G.    Plaintiff Tonja Wilson's Experience

44.    Plaintiff Tonja Wilson purchased a Barbie-branded product during the tariff Class Period. On October 7, 2025, Plaintiff Wilson purchased a Barbie DreamHouse sold under Mattel's Barbie brand, for which she paid a product price of $124.99, plus $9.04 in tax, for a total of $134.03.[15]

45.    Plaintiff Wilson paid a retail price that was inflated by the tariff-related cost increases that Mattel incorporated into its pricing during the tariff period. She would not have paid that higher price absent the unlawful tariffs and Mattel's pass-through of those tariffs to consumers. Plaintiff Wilson is entitled to a refund of the tariff-related price increase she paid, plus interest.

## CLASS ALLEGATIONS

46.    A class action is the proper forum to bring Plaintiffs' claims under Federal Rule of Civil Procedure 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

47.    This action satisfies all of the implicit and explicit requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

48.    **Numerosity:** the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Given the size of Mattel's consumer base, the Class numbers in the hundreds of thousands or millions of consumers.

---

[15] The order, placed through Amazon.com on October 7, 2025 (Order No. 112-3471805-6158657), reflects a product price of $124.99, plus $9.04 in estimated tax, for a total of $134.03.

49.  **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over any individual questions, and they include, without limitation:

a.  whether Defendants paid tariffs imposed under IEEPA on imported goods during the Class Period;

b.  whether Defendants increased retail prices on goods sold to consumers in response to those tariffs;

c.  whether Defendants passed through some or all of the tariff costs to consumers through higher prices;

d.  whether Defendants have sought or will seek refunds of those tariffs from the federal government;

e.  whether Defendants' retention of the tariff-related price increases paid by consumers—together with any refund of the same duties—constitutes unjust enrichment;

f.  whether Defendants' conduct was unlawful, unfair, or fraudulent under California's Unfair Competition Law; and

g.  the appropriate measure of restitution, damages, or other relief resulting from Defendants' conduct.

50.  **Typicality:** Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, purchased products from Mattel that were subject to tariff-related price increases. Plaintiffs make the same claims as the other Class members and have an interest in seeking compensation from Mattel.

51.  **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief

that is antagonistic or adverse to the members of the Class, and the injuries they have suffered are typical of those suffered by other Class members. In addition, Plaintiffs are represented by experienced and able counsel who have expertise in the areas of consumer protection, complex litigation, trial practice, and class action representation.

52. The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of the common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy, and individual actions would create a risk of inconsistent results.

53. The proposed Class is described as follows:

**All persons in the United States who purchased goods from Defendants during the Class Period, on which Defendants raised prices due to tariffs imposed by the government.**

54. Plaintiffs reserve the right to modify or amend the definition of the proposed Class, and to modify, amend, or add proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

55. Excluded from the Class are:

h. Defendants and any entities in which Defendants have a controlling interest;

i. Any entities in which Defendants' officers, directors, or employees are employed, and any of the legal representatives, heirs, successors, or assigns of Defendants;

j. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

k.      All persons or entities that properly execute and timely file a request for exclusion from the Class; and

l.      Any attorneys representing the Plaintiffs or the Class.

## CLAIMS FOR RELIEF

### COUNT I

**Unjust Enrichment**
**(On behalf of Plaintiffs and the Class)**

56.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

57.     Plaintiffs and the Class conferred a benefit upon Defendants in the form of the money Defendants received from them through the tariff-related price increases on goods during the Class Period. Defendants set and directed the challenged pricing and received the benefit of the resulting price increases across its brands; Defendants American Girl, LLC and American Girl Brands, LLC received the benefit of the tariff-related price increases on the American Girl-branded products they marketed, distributed, and sold, including the product purchased by Plaintiff Diane Moran.

58.     Defendants appreciate and/or have knowledge of the benefits conferred upon them by Plaintiffs and the Class.

59.     Under principles of equity and good conscience, Defendants should not be permitted to retain the amount of the tariff-related price increases obtained from Plaintiffs and the members of the Class, which Defendants unjustly obtained as a result of their price increases on goods subject to unlawful tariffs. As it stands, Defendants have retained the profits generated from their sales of products subject to tariff-related price increases, and they should not be permitted to retain those amounts while Mattel, Inc.—the parent that directs Defendants' pricing and through

which Defendants operate—simultaneously seeks and recovers a refund of the very duties paid on those imported products.

60.    Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and wrongful conduct alleged herein.

## COUNT II

### Money Had and Received
### (On behalf of Plaintiffs and the Class)

61.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

62.    Plaintiffs allege this claim individually and on behalf of the proposed Class.

63.    Defendants received money from Plaintiffs and from each member of the proposed Class in the form of tariff-related price increases. The Supreme Court has held that the tariffs giving rise to those increases were unlawful.

64.    The money belonged to Plaintiffs and to each member of the proposed Class.

65.    Defendants have not returned the money.

66.    It will offend equity and good conscience if Defendants are permitted to retain the amounts they derived from the price increases related to the unlawful tariffs. Plaintiffs seek the return of that money in an amount to be proven at trial.

67.    Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

## COUNT III

### Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (On behalf of Plaintiffs and the Class)

68.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

69.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., prohibits any unlawful, unfair, or fraudulent business act or practice. Defendants—led by Mattel, Inc., which maintains its principal place of business in California and directs the pricing and sales practices of itself and its American Girl subsidiaries from California—engaged in unlawful, unfair, and fraudulent business acts and practices within the meaning of the UCL.

70.    **Unfair.** Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. Defendants engaged in a course of unfair conduct by: (i) raising prices on goods to account for tariffs that have since been declared unlawful; (ii) failing to disclose to consumers that Defendants intended to seek, and would pursue, refunds of those tariffs from the federal government; and (iii) retaining both the tariff-related price increases collected from consumers and any refund of the same unlawful duties—thereby obtaining a double recovery at consumers' expense. The harm to Plaintiffs and the Class from this conduct is substantial, is not outweighed by any countervailing benefit to consumers or competition, and is not an injury the consumers themselves could reasonably have avoided.

71.    **Unlawful.** Defendants' conduct is unlawful because it constitutes unjust enrichment and money had and received, as alleged above, and because the price increases were predicated on tariffs that the Supreme Court has held were imposed without lawful authority.

CLASS ACTION COMPLAINT

72.    **Fraudulent.** Defendants' conduct is fraudulent because Defendants charged and retained tariff-related price increases from consumers while representing, through their pricing, that those amounts reflected legitimate costs of doing business, and while failing to disclose that the underlying tariffs were being challenged as unlawful and that Defendants intended to and did pursue recovery of those duties from the government. Members of the public are likely to be, and were, deceived by this conduct.

73.    As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent conduct, Plaintiffs and the Class suffered injury in fact and lost money or property, in the form of the tariff-related price increases they paid to Defendants and that Defendants have retained. But for the challenged conduct, Plaintiffs and the Class would not have paid the tariff-related price increases on goods subject to the unlawful tariffs.

74.    Plaintiffs and the Class are entitled to restitution of the money Defendants acquired through their unfair competition, together with injunctive relief enjoining Defendants from continuing to engage in the unlawful, unfair, and fraudulent practices alleged herein, and all other relief available under the UCL.

**COUNT IV**

**Declaratory Relief, 28 U.S.C. § 2201**
**(On behalf of Plaintiffs and the Class)**

75.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

76.    Plaintiffs allege this claim individually and on behalf of the proposed Class.

77.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

-20-
CLASS ACTION COMPLAINT

78. Plaintiffs' claims present an actual controversy as to the rightful ownership of the money paid to Defendants through the price increases directly related to the unlawful tariffs, and as to any refund of those duties.

79. Plaintiffs have suffered an injury by having been required to pay Defendants a tariff-related price increase because of the subject tariffs on Mattel's products. And Plaintiffs will imminently suffer further injury through Defendants' retention of any tariff refund corresponding to amounts already paid by consumers.

80. This Court can exercise its equitable power to enter a declaratory judgment that Defendants' retention of the tariff-related price increases paid by Plaintiffs and the Class—together with any refund of the same unlawful tariff charges—is unlawful for any of the reasons set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the proposed Class pray for relief and judgment against Defendants, as follows:

a. For an order certifying the proposed Class, appointing Plaintiffs and their counsel to represent the proposed Class, and directing notice to the proposed Class to be paid by Defendants;

b. For damages suffered by Plaintiffs and members of the proposed Class;

c. For restitution to Plaintiffs and the proposed Class of all monies wrongfully obtained by Defendants;

d. For disgorgement of all amounts by which Defendants have been unjustly enriched;

e. For injunctive relief requiring Defendants to cease and desist from engaging in the unlawful, unfair, and deceptive practices alleged in this Complaint, and to remedy their past conduct;

f. For a declaration that Defendants' retention of the tariff-related price increases paid by Plaintiffs and the Class, together with any refund of the same unlawful tariff charges, is unlawful;

g. For Plaintiffs' reasonable attorneys' fees, as permitted by law;

h. For Plaintiffs' costs incurred;

i. For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

j. For such other and further relief that this Court deems just and proper under equity or law.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the proposed Class, hereby demand a trial by jury on all claims so triable.

DATED: July 2, 2026

Respectfully submitted,

_____

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY PC**
600 Stewart Street, Suite 1100
Seattle, Washington 98101
Phone: (916) 823-6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

Jason T. Dennett*
**MILBERG, PLLC**

1700 7th Avenue, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

Paul M. DeMarco (SBN 112834)
**MARKOVITS, STOCK**
**& DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*pdemarco@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD**
**WOHLGELERNTER TANNER**
**WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*\*Pro Hac Vice* Forthcoming
*Counsel for Plaintiffs*
*and the Putative Class*